FILED
CLERK, U.S. DISTRICT COURT
11/18/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: KMA DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2026 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ZHE WANG,<br>aka "Chris,"<br>ERIC LY, and<br>MILDRED ESTRADA,<br><br>Defendants. | CR 2:26-cr-00759-SB<br><br><u>I N D I C T M E N T</u><br><br>[18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 545: Smuggling; 18 U.S.C. § 549: Breaking Customs Seals; 18 U.S.C. §§ 545, 981(a)(1)(C), 982, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. The San Pedro Bay Port Complex, which is comprised of the Ports of Los Angeles and Long Beach (the "Port of Los Angeles") was located within the Central District of California. The Port of Los Angeles was one of the busiest cargo container ports in the world, and hundreds of billions of dollars' worth of goods passed through the Port of Los Angeles.

2. The United States had established an inspection process to protect vital national security interests and otherwise ensure that goods are properly admitted into the United States. Among other things, the law required entities or persons importing goods into the United States to make available for inspection any goods they sought to import into the United States.

3. The United States Department of Homeland Security, United States Customs and Border Protection ("CBP") was the government agency responsible for inspecting imports. To execute its duties at the Port of Los Angeles, CBP would search containers that CBP selected for closer inspection. To ensure the containers had not been tampered with prior to inspection, each container was required to be sealed using a high-security bolt seal with a unique identifier number that corresponded to the container number. Once a cargo container was selected for inspection, the importer of the container was required to arrange for transportation of the container from the Port of Los Angeles to a designated government inspection facility.

4. Defendant ZHE WANG, also known as "Chris," was a resident of La Puente, California, who operated a logistic company in the Central District of California.

5. Defendant ERIC LY was a resident of Temple City, California, who was employed by an international shipping company.

6. Defendant MILDRED ESTRADA was a resident of Lake Elsinore, California, who helped coordinate the transportation of the shipping containers containing smuggled goods from the Port of Los Angeles to warehouses controlled by the co-conspirators.

B. OBJECTS OF THE CONSPIRACY

7. Beginning on an unknown date, but no later than July 9, 2024, and continuing until at least in or around July 2025, defendants WANG, LY, and ESTRADA, and others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to:

a. smuggle goods into the United States, in violation of Title 18, United States Code, Section 545; and

b. without authority, willfully remove customs seals placed upon vessels, vehicles, and packages containing merchandise in customs custody, in violation of Title 18, United States Code, Section 549.

C. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

8. The objects of the conspiracy were to be accomplished in substance as follows:

a. Co-conspirators known and unknown to the Grand Jury would coordinate the shipment of tens of millions of dollars of counterfeit and other illegal goods from China to the Port of Los Angeles.

b. Defendants WANG and LY would maintain and/or operate warehouses to store and conceal large amounts of smuggled goods that were illegally imported into the United States. Defendant WANG received orders from overseas customers in China regarding cargo containers to divert from the Port of Los Angeles and Long Beach. Defendant LY used his connections in the shipping industry to identify drivers who could take cargo containers from the Ports of Los Angeles and Long Beach to warehouses controlled by the co-conspirators.

c. When containers containing counterfeit and/or other contraband goods were selected by CBP for inspection, defendants WANG, LY, and ESTRADA, would hire commercial truck drivers to transport the contraband containers from the Port of Los Angeles to locations controlled by the co-conspirators, including warehouses controlled and/or managed by defendants WANG and LY, so that contraband could be removed from the containers before CBP inspection.

d. At locations controlled by the co-conspirators, co-conspirators known and unknown to the Grand Jury would break the security seals on shipping containers and remove contraband from the containers.

e. After removing the smuggled goods from the containers, co-conspirators known and unknown to the Grand jury would affix counterfeit security seals onto the containers to conceal that cargo had been removed from the containers.

f. Defendants WANG and LY would direct various co-conspirators, including defendant ESTRADA, to transport the containers, after they had been emptied of much of their original

cargo and re-secured with counterfeit seals, to locations authorized by CBP for the remaining cargo to be presented to CBP for inspection.

g. Defendants LY and WANG would pay co-conspirators, including defendant ESTRADA, fees that were substantially above normal trucking fees to transport the smuggled shipping containers.

D. OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants WANG, LY, and ESTRADA, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1: On April 24, 2024, using an encrypted messaging application, defendant WANG sent defendant LY a message with the contact information for defendant ESTRADA.

Overt Act No. 2: On April 24, 2024, using an encrypted messaging application, defendant WANG sent defendant LY a PDF document titled “SOP” that contained instruction on how to carry out the cargo diversion scheme. Among other things, the SOP directed drivers to check the container and “if found being followed / there are extra seal or GPS, go to the inspection station directly. If nothing happened then go to warehouse[.]”

Overt Act No. 3: On May 2, 2024, using an encrypted messaging application, defendant WANG told defendants LY and ESTRADA: “will send the DO [Delivery Order] in group chat once I received” and “I will give you the real warehouse address once I send the DO.”

Overt Act No. 4: On June 24, 2024, using an encrypted messaging application, defendant WANG sent a modified version of the SOP referenced in Overt Act No. 2 to defendants LY and ESTRADA, and

said: "Here is the SOP for the job." This SOP referenced that "if driver found out of being followed or there is a special custom seal or GPS tracker on container, the driver will need [to] directly deliver to exam station."

Overt Act No. 5: On August 30, 2024, using an encrypted messaging application, defendant WANG messaged defendant LY a picture of a high-security bolt seal and said: "I made first seal 😊" and "every time I make seal that means job is coming."

Overt Act No. 6: On September 12, 2024, defendant LY sent defendant ESTRADA a photo of a delivery order for Container CBHU9047612 (the "7612 Container").

Overt Act No. 7: On September 12, 2024, defendant LY sent defendant ESTRADA $112 via CashApp to pay for fees associated with the 7612 Container.

Overt Act No. 8: On September 12, 2024, defendant LY sent defendant ESTRADA a message via WhatsApp referencing the 7612 Container, stating: "this load is going to Irwindale."

Overt Act No. 9: On September 12, 2024, a co-conspirator picked up the 7612 Container from the Port of Long Beach and delivered it to a location that was not authorized by CBP so that one or more co-conspirators could remove the smuggled goods from the container before it was inspected by CBP.

Overt Act No. 10: On September 12, 2024, one or more co-conspirators broke the security seal on the 7612 Container, unloaded the smuggled goods from inside, and then affixed a fraudulent security seal on the container to conceal the co-conspirators' illegal activity.

Overt Act No. 11: On September 12, 2024, defendant LY sent

defendant ESTRADA $1,100 via CashApp for the delivery of the 7612 Container.

Overt Act No. 12: On September 26, 2024, using an encrypted messaging application, defendant WANG sent defendant LY a picture of two counterfeit security seals, writing "just done creating the seal."

Overt Act No. 13: On November 24, 2024, using an encrypted messaging application, defendants WANG and LY discussed their Chinese overseas client's request for them to create more counterfeit security seals in the United States.

Overt Act No. 14: On January 2, 2025, using an encrypted messaging application, defendant ESTRADA told defendants WANG and LY: "XYLU8188185 - this one the pier pass has been claimed by another company I'm going to try and pull it out as early as possible hopefully no one has picked it up by then."

Overt Act No. 15: On January 2, 2025, in response to the text message referenced in Overt Act No. 14, defendants WANG, LY, and ESTRADA discussed diverting one or more shipments to the co-conspirators' "El Monte warehouse."

Overt Act No. 16: On January 2, 2025, defendant ESTRADA instructed a co-conspirator to pick up shipping container number XYLU8188185 (the "8185 Container") from the Port of Los Angeles, California, which was scheduled to be inspected by CBP at the Price Centralized Examination Station ("CBP Examination Station 1") in Carson, California.

Overt Act No. 17: On January 2, 2025, a co-conspirator picked up the 8185 Container from the Port of Los Angeles and delivered it to a location that was not authorized by CBP so that one or more co-

conspirators could remove the smuggled goods from the container before it was inspected by CBP.

Overt Act No. 18: On January 2, 2025, one or more co-conspirators broke the security seal on the 8185 Container, unloaded the smuggled goods from inside, and then affixed a fraudulent security seal on the container to conceal the co-conspirators' illegal activity.

Overt Act No. 19: On June 13, 2025, using an encrypted messaging application, defendant WANG told defendant LY: "New DO FFAU6047760."

Overt Act No. 20: On June 13, 2025, using an encrypted messaging application, defendant LY wrote "We can do this jobs [sic] now FFAU6047760" to which ESTRADA wrote "Ok sorry was taking a shower dispatching driver right now to pull out but don't know what time I can go drop it off most likely after 6 pm."

Overt Act No. 21: On June 13, 2025, defendant ESTRADA instructed a co-conspirator to pick up shipping container number FFAU6057760 (the "7760 Container") from the Port of Los Angeles, California, which was scheduled to be inspected by CBP at CBP Examination Station 1, i.e., Price CES, in Carson, California.

Overt Act No. 22: On June 13, 2025, a co-conspirator picked up the 7760 Container from the Port of Los Angeles and delivered it to a location that was not authorized by CBP so that one or more co-conspirators could remove the smuggled goods from the container before it was inspected by CBP.

Overt Act No. 23: On June 13, 2025, one or more co-conspirators broke the security seal on the 7760 Container, unloaded the smuggled goods from inside, and then affixed a fraudulent

security seal on the container to conceal the co-conspirators' illegal activity.

<u>Overt Act No. 24:</u> On June 13, 2025, defendant LY sent defendant ESTRADA $1,800, via Zelle, as payment for the diversion of the 7760 Container.

<u>Overt Act No. 25:</u> On July 13, 2025, using an encrypted messaging application, defendant ESTRADA to defendants LY and WANG, "TMF and CTF PAID FOR UETU5496981." In response, defendant WANG stated, "let me know once container return, tx."

<u>Overt Act No. 26:</u> On July 13, 2025, defendant ESTRADA instructed a co-conspirator to pick up shipping container number UETU5496981 (the "6981 Container") from the Port of Long Beach, California, which was scheduled to be inspected by CBP at CBP Examination Station 1 in Carson, California.

<u>Overt Act No. 27:</u> On July 13, 2025, a co-conspirator picked up the 6981 Container from the Port of Long Beach and delivered it to a location that was not authorized by CBP so that one or more co-conspirators could remove the smuggled goods from the container before it was inspected by CBP.

<u>Overt Act No. 28:</u> On July 13, 2025, one or more co-conspirators broke the security seal on the 6981 Container, unloaded the smuggled goods from inside, and then affixed a fraudulent security seal on the container to conceal the co-conspirators' illegal activity.

<u>Overt Act No. 29:</u> On July 16, 2025, defendant LY sent defendant ESTRADA $1,800, via Zelle, as payment for the diversion of the 6981 Container.

////

COUNTS TWO THROUGH FIVE

[18 U.S.C. §§ 545, 2(a), 2(b)]

[ALL DEFENDANTS]

On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants ZHE WANG, also known as "Chris," ERIC LY, and MILDRED ESTRADA, each aiding and abetting the other, fraudulently, knowingly, and willfully caused merchandise to be imported and brought into the United States contrary to law, and received, concealed, and facilitated the transportation and concealment of such merchandise, knowing the merchandise to have been imported and brought into the United States contrary to law, by, among other things, knowingly failing to make the required declaration, failing to obtain the required authorization to import such merchandise, and failing to transport such merchandise through designated ports of entry into the United States.

| **COUNT** | **DATE** | **CONTAINER #** |
|---|---|---|
| TWO | September 12, 2024 | CBHU9047612 |
| THREE | January 1, 2025 | XYLU8188185 |
| FOUR | June 13, 2025 | FFAU6047760 |
| FIVE | July 6, 2025 | UETU5496981 |

COUNTS SIX THROUGH NINE

[18 U.S.C. §§ 549, 2(a), 2(b)]

[ALL DEFENDANTS]

On or about the dates listed below, in Los Angeles County, within the Central District of California, defendants ZHE WANG, also known as “Chris,” ERIC LY, and MILDRED ESTRADA, each aiding and abetting the other, willfully and without authority removed and caused the removal of a customs seal, namely, the seal on the containers listed below, and which at all relevant times was in the custody of United States Customs and Border Protection.

| **COUNT** | **DATE** | **CONTAINER #** |
|---|---|---|
| SIX | September 12, 2024 | CBHU9047612 |
| SEVEN | January 1, 2025 | XYLU8188185 |
| EIGHT | June 13, 2025 | FFAU6047760 |
| NINE | July 6, 2025 | UETU5496981 |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant’s conviction of the offenses set forth in any of Counts One through Nine of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any such offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 545]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 545, and Title 28, United States Code, Section 2461(c), in the event of any of any defendant's conviction of the offenses set forth in any of Counts Two through Five of this Indictment.

2. Any defendant so convicted shall forfeit to the United States the following:

(a) All right, title, and interest in any and all property, real or personal constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of each such offense;

(b) Any and all merchandise introduced into the United States in violation of Title 18, United States Code, Section 545, or the value thereof; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof:

//

(a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

COLIN S. SCOTT
Assistant United States Attorney
National Security Division

AMANDA B. ELBOGEN
Assistant United States Attorney
National Security Division